## LORING *v.* WOODWARD.

Interest is allowed on legacies, generally, from the time of payment limited in the will; otherwise from the end of one year from the testator's decease; except that in the case of a child, or adopted child, for whose support no provision is made, interest is allowed from the testator's decease.

In the case of specific legacies, the interest or profits of the property bequeathed, go to the legatee, without reference to the time of the delivery of the articles to the legatee. If the specific legacy is given to one, and in a certain event over to another, each is entitled to the income during the time he is entitled to the principal. But none of these rules apply where the will directs otherwise.

A legacy of "one half of all my stock in the following named railroads, to wit, the L. & N. Railroad, &c., and one half of my stock in the W. Bank," is specific.

Parol evidence is not admissible to show the intention of a testator as to the income of a specific legacy, where the will is silent.

---

Loring v. Woodward.

---

ASSUMPSIT, brought by John Loring and wife against Abner B. Woodward. The writ was dated September 16, 1859, and was brought against the defendant as executor of the will of Peggy Fuller, of Francestown, deceased, to recover the dividends on certain stocks. It was agreed that Peggy Fuller made her will on the ninth of January, 1858, and died on the eleventh of February following; and her will was proved, in solemn form, on the sixth of July, 1859, and no appeal was taken.

The will contained, among other items, the following:

" I give and bequeath unto my sister-in-law, Desire Loring, one half of all my stock in the following named railroads, to wit, the Lowell & Nashua Railroad, &c. Also, I give and bequeath unto the said Desire Loring, one half of my stock in the Webster Bank.

" I give and bequeath unto the children of my sister-in-law, E. West, the other half of all my stock," &c. (as above), " to be divided," &c.; " and I direct my executor to transfer all the above named stocks as above bequeathed, within one year after my decease."

The will contains several other legacies and bequests, and then gives all the rest and residue of her property to the defendant and John West.

On the seventeenth of January, 1859, the defendant transferred to Desire Loring the stocks bequeathed to her, and took from the plaintiffs the following receipt:

Received of Abner B. Woodward, executor of the last will of Peggy Fuller, late of Francestown, deceased, fifty-seven shares of the Nashua & Lowell Railroad, &c., being the stocks specifically bequeathed to me by said deceased.

DESIRE F. LORING.

Jan. 17th, 1859.                    JOHN LORING.

After the decease of Mrs. Fuller, and before the transfer of the stocks to Mrs. Loring, the defendant received dividends on said stocks to the amount of $1,274, which the

plaintiffs knew at the time of giving said receipt. Before commencing this suit the plaintiffs demanded of the defendant one half of said dividends.

If it would be competent for the defendant to show, by parol, that the testatrix, at the time of executing her will, expressed her intention that these dividends should go into the residuary fund, and that such was her intention and understanding of the effect of the will, the parties admit that such was the fact.

*Morrison & Stanley*, for the plaintiffs.

*I. A. Eastman*, for the defendant.

BELL, C. J. The rules for the allowance of interest on legacies where the will is silent on that subject, seem quite simple and well settled. If a pecuniary legacy is payable generally without designation of any time of payment, it is payable at the end of the year from the death of the testator, without interest; but if not then paid, it bears interest after the expiration of the year. *Wood* v. *Pinoyer*, 3 Ves. 333; *Gibson* v. *Ball*, 7 Ves. 96; *Webster* v. *Hale*, 8 Ves. 410, 413; *Benson* v. *Maude*, 6 Madd. 15; *Freeman* v. *Simpson*, 6 Simons 75; *Sullivan* v. *Winthrop*, 1 Sum. 1; *Williamson* v. *Williamson*, 6 Paige 298; *Sholes* v. *Carr*, 3 Munf. 10.

If such a legacy is payable at a specified time, it bears interest after that time, but not before. *Heath* v. *Perry*, 3 Atk. 121; *Tyrrell* v. *Tyrrell*, 4 Ves. 1; *Birdsall* v. *Howlett*, 1 Paige 32; *Stephenson* v. *Axson*, 1 Bail. Ch. 274; *Smith* v. *Field*, 6 Dana 361.

To these rules there is one exception. If the legacy is given to a child, or to an adopted child, or a child to which the testator has placed himself in the place of a parent, which is under age, and for whose support no other provision is made, it bears interest from the testator's decease.

*Clarke* v. *Sewell,* 2 Atk. 90; *Wilson* v. *Madison,* 2 Y. & Coll. 372; *Bickford* v. *Tobin,* 1 Ves. Sen. 310; *Crickett* v. *Dolby,* 3 Ves. 13; *Harvey* v. *Harvey,* 2 P. W. 24; *Incledon* v. *Northcote,* 3 Atk. 438; *Chambers* v. *Godwin,* 11 Ves. 2; *Brown* v. *Timperly,* 3 Russ. 264, n.; *Sullivan* v. *Winthrop,* 1 Sum. 1; *Lupton* v. *Lupton,* 2 John. Ch. 614; see 2 Wms. Ex. 1221, note; *Hite* v. *Hite,* 2 Rand. 509.

In the case of a specific legacy, that is, a legacy of any specific article or thing, the income, profits, or produce of the article after the decease of the testator, goes to the legatee without regard to the time at which the article is to be delivered to the legatee. *Sleech* v. *Thorington,* 2 Ves. Jr. 563; *Barrington* v. *Tristram,* 6 Ves. 345; *Bristow* v. *Bristow,* 5 Beav. 289; *Sawrey* v. *Rumney,* 15 E. L. & E. 4; 2 Rop. Leg. 227; Went. Ex. 445; *Isenhart* v. *Brown,* 2 Ed. Ch. 341.

In the case of bequests to one, and in certain events over to another, each is entitled to the income during the time he is entitled to the principal. *Taylor* v. *John,* 2 P. W. 504; *Shepherd* v. *Ingram,* Amb. 448; *Montgomery* v. *Woodly,* 5 Ves. 522; 3 Atk. 102, note; *Branstram* v. *Wilkinson,* 7 Ves. 420; *Mills* v. *Roberts,* 1 R. & M. 555; *McDonald* v. *Brice,* 2 Keen 284; *Barber* v. *Barber,* 3 M. & Cr. 688.

These rules do not apply where specific directions are given by the will, or where a different intention may be inferred from its provisions. *Leslie* v. *Leslie,* Cases *temp.* Sugden 1; *Bradley* v. *Dawes,* 1 Keen 362; *Knight* v. *Knight,* 2 Sim. & Stu. 492.

As to these rules, see 2 Wms. Ex. 1221; 2 Rob. Wills 96; 2 Shars. Bla. Com. 514, n.

A legacy is specific, as has been said, when it is a bequest of a specific article of the testator's personal estate, distinguished from all others of the same kind; as, for instance, of a particular horse, or piece of plate, money in a purse or chest, a particular stock in the public funds, or a

bond or other security for money. *Stevenson* v. *Dawson*, 3 Beav. 349; 1 Rop. Leg. 170; 2 Wms. Ex. 993.

In the case before us the legacy is clearly specific. " One half of all my stock in the following named railroads, to wit, the Lowell & Nashua Railroad," &c., and " one half of my stock in the Webster Bank," designate the particular stocks referred to ; and if the testator had no such stocks, the legacy must fail. A legacy of *my stock*, or *in my stock*, or *part of my stock*, is deemed specific. *Kirby* v. *Potter*, 4 Ves. 750; *Wallace* v. *Wallace*, 23 N. H. 149; *Ford* v. *Ford*, 23 N. H. 212, where many cases on this point are collected ; to which may be added, *Grey* v. *Sharpe*, 1 M. & K. 589; *Sibley* v. *Perry*, 7 Ves. 529; *Foot, App't*, 22 Pick. 299; *Brainerd* v. *Cowdery*, 16 Conn. 1.

To this legacy, then, the general principle must apply, that the income and profits of these stocks go with the principal, unless there is some thing in the will indicating a different intention ; and we have discovered nothing, and nothing is suggested, from which a different intention can be inferred.

It is admitted by the case, that if it would be competent for the defendant to show, by parol evidence, that the testatrix, at the time of executing her will, intended to have the dividends go into the residuary fund, the proof would be that such was her intention, and her understanding of the effect of her will.

This admission raises the question whether parol evidence is admissible to vary, change, or affect the construction or operation of a will, in respect to the allowance of the income of a legacy.

It is not questioned that the general rule of the common law is, that parol evidence is not admissible to control, change, vary, or affect any written instrument. 1 Gr. Ev. 315; 2 Phill. Ev. 350; 3 Stark. Ev. 895, 1010.

The claim here is, that in the construction of wills, where the will is silent, and the law, in accordance with

its general rules, presumes an intention of the party, there parol evidence is admissible to rebut the presumption, by showing a different intention in fact.

The rule thus relied on is stated in 1 Gr. Ev. 339, sec. 296. Parol evidence is allowed by courts of equity to affect the operation of a writing, namely, where the evidence is offered to rebut an equity. The meaning of this is, that where a certain presumption would in general be deduced from the nature of an act, such presumption may be repelled by extrinsic evidence showing the intention to be otherwise. Thus two legacies, of which the sums and expressed motives exactly coincide, are presumed not to be intended as cumulative, but parol evidence may be received to rebut the presumption. Gresley Eq. Ev. 200–218; Roper Leg. 317, 353; 2 Rob. Wills 1; 2 Wms. Exors. 1109, 1110. Presumptions of law or equity, says *Peake* (Ev. 113), may be repelled by parol testimony, for they only prevail where there is no evidence to rebut them, according to the maxim, *Stabit presumptio, donec probetur in contrarium. Davenport* v. *Mason,* 15 Mass. 85, 90.

Though this rule is stated in some of the books as applying to wills only, and in others as a rule of equity, it seems to us that it is but an example of the general rules of the law in relation to presumptions. Presumptions are merely arbitrary rules, founded, however, on the principles of justice, or the laws of nature, or the ordinary course of human conduct and affairs, and the connection usually found to exist between certain things. They operate in some instances conclusively, and in others, where a peremptory and absolute operation would be attended with inconvenience, they may be answered and rebutted, presumptions of law being in such cases but *primâ facie* inferences, or intendments made by the courts, and liable to be repelled by proof to the contrary.

The rule referred to is, we think, applicable only to cases of presumption of the latter class, and is stated quite too

broadly in the books referred to, and should be qualified
by an exception of all cases of conclusive presumption.
To authorize, then, the admission of parol evidence of the
devisor's intention as to the profits or interest of a legacy,
it is not enough that, in the silence of the will, the law
entertains a certain presumption; it must appear that this
presumption is not a conclusive or peremptory presump-
tion which cannot be controverted, which is known in the
civil law as a *presumptio juris et de jure,* but a mere *primâ
facie* or disputable presumption, in which contradictory
evidence is admissible, denominated in the civil law, from
which the ecclesiastical and equity courts derive this rule,
*presumptio juris.* Gr. Ev. 18, note.

This question is to be determined by the authority of
decisions, or upon considerations of justice and conven-
ience applicable to each case; for our impression is that it
would be very difficult to lay down in few words a general
rule on the subject.

The reasons of convenience and expediency, and the
analogy of cases of a similar kind, seem in favor of the
conclusiveness of the presumption in this case. In the
case of the time of payment of legacies, where the will is
silent, the presumption of the law is conclusive; no evi-
dence of intention outside the will is received. So the
presumption as to the time of payment, or performance of
notes or other contracts, is conclusive; and the law, in the
case of interest, does or does not make the allowance upon
its own construction of written contracts, and never on any
other evidence of intention.

Upon the question of authority no case has been cited
or found by us, in which it has been held that parol evi-
dence of the testator's intention as to the interest of a leg-
acy has been received; and this seems to us a strong cir-
cumstance, unfavorable to the exception contended for, to
the general rule of the law forbidding parol evidence to
affect written instruments.

---

We have found one case only referred to, which seems to be in point here—*Mansel* v. *Price*, cited in 2 Cow. & Hill's Notes to Phill. Ev. 529, from Sugden on Vendors 183, Am. Ed. of 1836. It is thus stated: "Direct evidence of intention is inadmissible for the purpose of proving what was to be done with the interest of a legacy till the time of payment." We have not relied much on this citation, but, on the general view of the law, we think the evidence of intention offered is inadmissible, and there must be

*Judgment for the plaintiffs.*